## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARGARET PERWEILER<br>3819 Lydon Lane<br>Moosic, PA 18507 | :<br>:<br>:<br>: | CIVIL ACTION |
| Plaintiff,<br>v. | :<br>:<br>: | No. |
| THE LANDLINE COMPANY, INC.<br>113 S College Ave.<br>Fort Collins, CO 80524 | :<br>:<br>:<br>: | **JURY TRIAL DEMANDED** |
| Defendant. | :<br>:<br>: | |

## CIVIL ACTION COMPLAINT

Margaret Perweiler, (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Plaintiff against The Landline Company, Inc. (hereinafter "Defendant") for violations of the Surface Transportation Assistant Act ("STAA" - 49 U.S.C. § 31105)[1]; the New Jersey Wage Payment Law ("NJ WPL" - N.J.S.A. §§ 34:11-4.1 et seq.); the New Jersey Conscientious Employee Protection Act ("CEPA" – N.J.S.A. 34:19-1 et. seq.); and New Jersey common law.

2. Plaintiff asserts, *inter alia*, that she was unlawfully terminated from her employment in retaliation making repeated complaints, both internally and to governmental

---

[1] Plaintiff's claims under the STAA are pled herein for notice purposes and she intends to amend her Complaint as of right immediately. She is required to wait 210 days from the date she first filed her OSHA Complaint on October 23, 2024, before she can proceed in this Court, as provided for in 49 U.S.C. § 31105(c). The above referenced 210 day period expires on May 21, 2025.

1

agencies, that Defendant was not following Department of Transportation ("DOT"), Department of Labor "(DOL"), or Federal Motor Carrier Safety Administration ("FMCSA") regulations.

3. Specifically, Plaintiff raised good faith complaints that Defendant was requiring drivers to work in excess of regulated service time, forego required safety inspections, operate unsafe motorcoaches with open and obvious safety issues, and even operate motor coaches with passengers alongside flammable materials. Shortly after objecting to and complaining about said issues, Defendant terminated Plaintiff under demonstrably pretextual circumstances as discussed herein.

## JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress of such federal statutes. Any state law claims asserted herein arise out of the same common nucleus of operative fact(s), rendering supplemental jurisdiction of state claims appropriate.

5. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 because there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds $75,000. Plaintiff is a citizen of Pennsylvania and Defendant is a citizen of Delaware and Colorado.

6. Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

7. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district, in addition, venue is properly laid in this district because Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant residents of the District of New Jersey for this action.

8. On or about October 23, 2024, Plaintiff timely filed a complaint of discrimination and retaliation with Department of Labor ("DOL") vis-a-vis the Occupational Safety and Health Administration ("OSHA") (the "OSHA Complaint") and will bring this action upon the Secretary of Labor's failure to issue a final order within 210 days after receipt of the OSHA Complaint.

## PARTIES

9. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. Plaintiff is an adult individual, with an address as set forth in the caption.

11. Defendant is a Delaware corporation with a principal place of business at an address as set forth in the caption.

12. Defendant operates a regional hub located at 2531 E State Street Trenton, NJ 08619, out of which it employed Plaintiff ("Landline Trenton").

13. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

14. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

15. Defendant is a transportation company that offers last mile transportation solutions for individual airlines. Defendant operates under a Capacity Purchase Agreement ("CPA") with, inter alia, both American Airlines and United Airlines to transport passengers between connecting flights at some airport hub locations.

16. While employed with Defendant, Plaintiff operated motorcoach services shuttling passengers for American Airlines between Allentown Internation Airport ("ABE") and Philadelphia International Airport ("PHL") and; for United Airlines between ABE and Newark International Airport ("EWR").

17. Essentially, instead of flying the short connecting routes, passengers needing to connect to flights at PHL/EWR from ABE would check in at ABE, clear security, and board Defendant's motorcoach for the journey by interstate highway.

18. On or about July 5, 2022, Defendant hired Plaintiff as a CDL Motor Coach Driver and employed her in that capacity until unlawfully terminating her employment on or about May 20, 2024, as discussed herein.

19. Specifically, Plaintiff was considered based out of Landline Trenton, as Defendant's Northeast management and operations were directed from that location. Plaintiff's personnel file was located at Landline Trenton, she interviewed at Landline Trenton, and she attended trainings at Landline Trenton.

20. Additionally, anytime Plaintiff's equipment needed to be serviced she would be required to drive it to Landline Trenton.

21. Throughout her employment with Defendant, Plaintiff operated and drove motorcoaches for Defendant, well in excess of 10,0001 lbs.

4

22. Plaintiff was a hard-working employee, who excelled at her job and received numerous awards and recognition for her exemplary work throughout her tenure with Defendant.

23. In fact, Plaintiff was recognized as one of Defendant's top drivers, given raises for outstanding service, and even received the "PROPS" award from American Airlines for her exceptional contributions and for going above and beyond her role.

24. Plaintiff has operated CDL equipment, including motorcoaches, for the better part forty (40) years. In short, Plaintiff was an expert driver, had a pristine CDL record, and was fully aware of all FMCSA rules and regulations.

25. In the months immediately leading up to her termination, Plaintiff was primarily supervised by Defendant's NE Vehicle Operations Manager, Michael Sharer ("Sharer") (based at Landline Trenton), and Defendant's Director of Vehicle Operations, Robin Erkenbrack ("Erkenbrack").

26. In or about October 2022, once Sharer became Plaintiff's supervisor, he began to demand that Plaintiff (and other drivers) ignore safety and security regulations in order to maintain travel schedules and keep their airline customers happy.

27. Specifically, Sharer directed Plaintiff to operate unsafely, forego required breaks, operate unsafe equipment, and modify federal records in violation of federal regulations.

28. In the months immediately leading up to her unlawful termination, Plaintiff recognized numerous safety and security issues and made repeated complaints, on a near daily basis, both internally and to governmental agencies, that Respondents were not following DOT, DOL, or FMCSA regulations and were violating state and Federal law.

29. By way of example only, and by no means an exhaustive list, Plaintiff complained that:

a. Defendant was requiring her (and other similarly situated drivers) to take their "breaks" only once their motorcoaches were inside TSA safe zones. This resulted in Plaintiff, and other drivers, being forced to sit on motorcoaches with no HVAC, no water, and no food. Plaintiff was not allowed to get on or off the bus in these restricted areas;

b. Defendant was requiring Plaintiff to work through regularly scheduled and mandatory rest breaks in violation of FMCSA regulations;

c. Defendant was requiring Plaintiff to perform other functions after her scheduled shift but did not pay her for all hours work in violation of state law;

d. While exempted from overtime, Defendant was still not paying Plaintiff and other drivers for *all* hours worked in violation of state law;

e. Defendant required drivers to do quick shift changes, where drivers were unable to perform full safety inspections in violation of FMCSA regulations;

f. Defendant was allowing other drivers to commit serious safety infractions, including not clearing their motorcoaches after shifts;

g. Defendant instructed drivers to operate unsafe equipment, including motorcoaches, with open and obvious safety issues in violation of FMCSA regulations; and

h. Defendant stored flammable materials on the motorcoaches and instructed Plaintiff to operate the same, **with passengers on board**, in violation of FMCSA regulations.

30. Another example of Defendant's **complete disregard** for safety or legal obligations includes when Plaintiff noticed and repeatedly complained that her electronic log had been repeatedly modified by Defendant's management to indicate that she had taken breaks (when she had not) and without her knowledge, consent or notice. This is **a very serious federal regulatory violation**. 49 C.F.R. § 395.30 states:

> **(a)** *Accurate record keeping.* A driver and the motor carrier must ensure that the driver's ELD records are accurate.
>
> * * *
>
> **(d)** *Motor carrier-proposed edits.*
>
> **(1)** On review of a driver's submitted records, the motor carrier may request edits to a driver's records of duty status to ensure accuracy. **A driver must confirm or reject any proposed change**, implement the appropriate edits on the driver's record of duty status, **and recertify and resubmit the records in order for any motor carrier-proposed changes to take effect**.
>
> **(2)** **A motor carrier may not request edits to the driver's electronic records before the records have been submitted by the driver**.
>
> **(3)** Edits requested by any system or by any person other than the driver **must require the driver's electronic confirmation or rejection**.
>
> **(e)** *Coercion prohibited.* A motor carrier may not coerce a driver to make a false certification of the driver's data entries or record of duty status.
>
> *See* 49 C.F.R. § 395.30 (Emphasis added).

31. Despite her aforementioned complaints, Sharer explicitly tried to prohibit Plaintiff from communicating or sharing any of the aforementioned safety or security issues with airline or Transportation Safety Administration ("TSA") personnel and made it clear to Plaintiff that if she brought any of these safety or security concerns to the airline, she would face swift retribution.

32. Disregarding constant Sharer's threats, Plaintiff still made complaints of safety and security issues to airline personnel, including American Airlines' Managers, Mark Morales Padilla ("Morales Padilla") and Geraldine Vial, and TSA personnel.

33. In or about March/April 2024, in response to Plaintiff's recent complaint to American Airline's manager regarding a security breach, Defendant's Human Resources Representative, Brooke Rogers ("Rogers"), sent Plaintiff an email in or about March/April 2024 specifically warning her not to meet or discuss safety or security issues without a representative from Defendant present.

34. Each time Plaintiff would complain (as discussed *supra*), Sharer acknowledged receipt of Plaintiff's repeated complaints but claimed that his actions were "not illegal." Sharer further denigrated Plaintiff telling her that her concerns were "petty."

35. The only thing that seemingly mattered to Defendant, and in particular Sharer, was keeping the schedule on time.

36. Sharer grew increasingly hostile towards Plaintiff and was clearly upset by her repeated complaints.

37. Finally, in or about early May 2024, Plaintiff refused to operate a motorcoach that was leaking from multiple locations inside the motorcoach and was unsafe to transport passengers.

38. Plaintiff again reported this most recent incident of unsafe equipment to Morales Padilla, Vial, and Sharer.

39. Sharer then reprimanded Plaintiff (as he had often done in the past) for sharing information with the airlines. Sharer specifically told Plaintiff to keep quiet about things that made Defendant "look bad."

40. Shortly after her most recent complaints, on or about May 20, 2024, despite a nearly two (2) year stellar work history, to Plaintiff's complete shock, she was accused of having "habitual absences" and was terminated from her employment, just weeks after engaging in protected activity.

41. Sharer claimed that Plaintiff's "habitual absences" were due to her alleged "refusal" to work on her scheduled days off.

42. However, Plaintiff's schedule, including her days off, had remained almost identical during her two (2) years of employment.

43. To be clear, Plaintiff had missed minimal, if any, of her scheduled shifts, always followed Defendant's call out procedures, and utilized accumulated PTO if/when she had to call out.

44. The reality is that Defendant was operating in an abhorrent manner, was very short staffed, disregarded DOT, DOL, FMCSA regulations (including *inter alia* those found in 9 CFR Part 390-399), violated state and federal law, and then concocted a "reason" to terminate her in retaliation for complaining of same.

45. Plaintiff merely provides examples *supra* of factual and legal violations of regulations and laws, as much of what Plaintiff was required and directed to do during her employment was illegal and/or against state and federal regulations. *See, e.g.*, *Durst v. FedEx Exp.*, No. 03–CV–5186 (JBS), 2005 WL 3534179, at *5 (D.N.J. 2005) (a plaintiff is not required to cite to any laws for his or her reasonable belief of a legal violation during litigation; but rather, to set forth a communicated belief of something that was believed to be unlawful).

**COUNT I**
**Violations of the New Jersey Conscientious Employee Protection Act ("CEPA")**
**([1] Wrongful Termination & [2] Retaliation)**

46. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47. Plaintiff was terminated for pretextual reasons shortly after engaging in protected activity by making good faith complaints and/or for objecting to Defendant's actions which she reasonably believed to be illegal such as:

   a. Defendant was requiring her (and other similarly situated drivers) to take their "breaks" only once their motorcoaches were inside TSA safe zones. This resulted in Plaintiff, and other drivers, being forced to sit on motorcoaches with no HVAC, no water, and no food. Plaintiff was not allowed to get on or off the bus in these restricted areas;

   b. Defendant was requiring Plaintiff to work through regularly scheduled and mandatory rest breaks in violation of FMCSA regulations;

   c. Defendant was requiring Plaintiff to perform other functions after her scheduled shift but did not pay her for all hours work in violation of state law;

   d. While exempted from overtime, Defendant was still not paying Plaintiff and other drivers for *all* hours worked in violation of state law;

   e. Defendant required drivers do quick shift changes where drivers were unable to do full safety inspections in violation of FMCSA regulations;

    f.  Defendant instructed drivers to operate unsafe equipment including motorcoaches with open and obvious safety issues in violation of FMCSA regulations; and

    g.  Defendant stored flammable materials on the motorcoaches and instructed Plaintiff to operate, **with passengers on board**, in violation of 49 CFR § 177.870.

    h.  Defendant's complete disregard for safety or legal obligations, Plaintiff noticed and repeatedly complained that her electronic log had been repeatedly modified by Defendant's management to indicate that she had taken breaks (when she had not) and without her knowledge, consent or notice in violation of 49 C.F.R. § 395.30.

48.    These actions as aforesaid constitute violations of CEPA.

## COUNT II
### *Pierce* Common-Law Wrongful Termination
### (Retaliation - Wrongful Termination)

49.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50.    New Jersey maintains common-law protections for employees terminated for opposing unlawful acts, refusing to commit crimes, and who are terminated for violations of public policy.

51.    Plaintiff complained of/objected to Defendant's clear violations of public policy (set forth *supra*).

52. Plaintiff was terminated by Defendant for complaining of/objecting to Defendant's requiring Plaintiff to engage in such clear mandates of public policy as a condition of her continued employment.

53. Such actions are a violation of Common Law in the state of New Jersey. *See Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J 58 (1980).

## COUNT III
### Violations of the New Jersey Wage Payment Law - N.J.S.A. §§ 34:11-4.1 *et seq.*
### ([1] Failure to Pay All Wages and [2] Retaliation)

54. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

55. Plaintiff had an agreement with Defendant whereby Defendant agreed to compensate Plaintiff for all services performed and hours worked during her employment.

56. Defendant failed to compensate Plaintiff for all wages owed during her employment.

57. Plaintiff performed the agreed upon services for Defendant, and Defendant failed to properly compensate Plaintiff for the services rendered, as specified by the Parties' agreement.

58. Defendant unlawfully manipulated Plaintiff's logbooks, directed her to work past her scheduled shifts, and failed to pay her for all hours worked.

59. New Jersey law prohibits employers from withholding or diverting any portion of an employee's wages unless the employer is required or empowered to do so by state law, or the employer withholds or diverts and amount for an authorized contribution. *See* N.J.S.A. § 34:11-4.4.

60. Plaintiff repeatedly complained that Defendant's aforesaid failure to pay her the proper wages violated state wage laws.

61. Following Plaintiff's numerous complaints of/objections to the aforesaid illegal practices of Defendant, she was discharged in retaliation from her employment with Defendant (set forth *supra*).

62. The New Jersey Wage Payment Law provides that "the employee may recover in a civil action the full amount of any wages due, or any wages lost because of any retaliatory action taken in violation of subsection a. of this section, plus an amount of liquidated damages equal to not more than 200 percent of the wages lost or of the wages due, together with costs and reasonable attorney's fees as are allowed by the court, except that if there is an agreement of the employee to accept payment of the unpaid wages supervised by the commissioner pursuant to section 9 of P.L. 1965, c.173, *see* N.J.S.A. § 34:11-4.9 or R.S. § 34:11-58, the liquidated damages shall be equal to not more than 200 percent of wages that were due prior to the supervised payment. *See* N.J.S.A. § 34:11-4.10(c).

63. Plaintiff is entitled to all statutory damages and enhancements consistent with the New Jersey Wage Payment Law including, but not limited to, statutory penalties defined in N.J.S.A. § 34:11-4.10(c).

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B. Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish

Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

  C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

  D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

  E. Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

         Respectfully submitted,

         **KARPF, KARPF & CERUTTI, P.C.**

  By: _____
     Ari R. Karpf, Esq. (91538)
     8 Interplex Drive, Suite 210
     Feasterville-Trevose, PA 19053
     (215) 639-0801
     akarpf@karpf-law.com

Dated: May 20, 2025